UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
0:15-CR-00078 (SRN/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VLADIMIR VLADIMIROVIC BRIK,<br><br>Defendant. | **POSITION OF DEFENDANT**<br>**VLADIMIR BRIK** |

"Vlad goes out of his way to help others" seems to be a recurring theme in how others in the community view Mr. Brik. From his family and friends to colleagues and fellow volunteers, all seem to appreciate Mr. Brik's "caring" and "giving" personality. In the words of Scott Van Daele, the Director of Distributive Services at CHUM where Mr. Brik has been volunteering since May of 2016, Mr. Brik is "known for his work ethic, positive attitude, teamwork mentality, leadership, diligence, sense of humor, and his overall sense of duty to serve others". Ironically, these same qualities that make him excel as a colleague and a human being, also led him down the wrong path, where the false sense of friendship, teamwork, leadership and ambition lodged him deeper and deeper into an illegal enterprise.

I.   **BACKGROUND**

In September of 2015, Mr. Brik along with other co-conspirators was charged by the Superseding Indictment with Conspiracy to Distribute Controlled Substance Analogues in violation of 21 U.S.C. §§ 802(32)(A), 813, 814(a)(1), 841(b)(C), and 846 (Count 1), Conspiracy to Introduce Misbranded Drugs Into Interstate Commerce in violation of 21 U.S.C. §§ 331(c),

331(k), 333(a)(2) (Count 3), and, Money Laundering Conspiracy in violation of 18 U.S.C. §§ 1956(a)(2)(A), 1956(h).

On July 12, 2016, Mr. Brik pleaded guilty to Count 1 and Count 4. The guideline range as calculated in the Presentence Investigation Report ("PSR") is for 480 months (40 years) for the two offenses based on Mr. Brik's offense level of 43 and a criminal history category of III. Mr. Brik does not object to these guideline calculations in the PSR.

In the plea agreement, the government agreed to advocate for a sentence of not more than 138 months' imprisonment as appropriate in this case. Mr. Brik understands that the Court is not bound by the government recommendation and may sentence above the proposed 138 months. At sentencing, Mr. Brik will be pleading with this Court for a significant departure variance from the guidelines based on the special circumstances of his case in accordance with the 3553(a) factors.

## II.    OBJECTIONS TO PSR

On December 12, 2016, Mr. Brik made several objections to the preliminary PSR. Some of these objections have been resolved, while others addressed within the final version of the PSR. Ultimately, none of these objections affected the guideline calculations and Mr. Brik's reservations were generally addressed in the final version of the PSR.

Mr. Brik also objected to the calculation of the amount of SSCs for which Mr. Brik is accountable. While Mr. Brik agrees that these calculations ultimately do not affect the guideline calculations in this case, he joins in the observation with Defendants Awad and Wazwaz that the equivalency table in the Sentencing Guidelines does not specifically address all the synthetic compounds in the case. (Docs. #439, #520). Awad and Wazwaz cited *United States v. Zeidan* and *United States v. Hossain,* 2016 WL 70583 (S.D.FL. 2016) where the courts struggled with finding a fair method of converting SSCs on the drug quantity table. Mr. Brik does not raise the issue to

2

challenge the guideline calculations, but rather to provide a context for the circumstances of his case.

### III. DOWNWARD SENTENCE VARIANCE

Through the eyes of many friends and colleagues, as well as family, Mr. Brik emerges as an impressive young man, caring, giving, hard-working, smart, with many talents and bright future possibilities. Yet, through the lines of police reports, complaints and indictment information appears quite a different Mr. Brik, an apparent opportunist and a criminal with a violent past. As Mr. Brik stands before the Court awaiting his sentencing, he asks the Court to view his life and actions in perspective of his past, present, and future.

#### A. Past

In his 27 years of life, Mr. Brik endured a lot of turmoil. Born in Ukraine during the collapse of the Soviet Union, he fled with his family to the United States from the economic and political chaos. Like many other immigrant families, the Briks endured a lot of hardships while building their lives in Madison, WI. Unlike other immigrant families, the Briks endured so much more: divorce, deaths in the family (one of which was a homicide), mental health issues (Mr. Brik's mother diagnosed with bi-polar disorder), re-marriage, blending families, difficulty to assimilate, attempted suicide by Mr. Brik's mother. All of these things happened during the childhood and adolescence years of Mr. Brik, when a young person is most emotionally vulnerable. Since middle school, Mr. Brik was looking for stability and a strong family. Being physically and emotionally abused by his older brother forced him to move in with Running Horse Livingston and Theobald Allen, the parents of his childhood friend Michael Allen where he stayed until he graduated from high school. Mr. Brik had a lot of penned up anger growing up from being mistreated by his brother and not receiving fair treatment from his mother.

3

When Mr. Brik finally moved away to college in Duluth, he continued to look for strong family connections.  His relationship with his biological father was good, but emotionally void.  There was also a language barrier between the two as Brik Sr. spoke broken English, and Brik Jr. spoke broken Russian.  When his father purchased a home in Duluth, Mr. Brik opened the doors to his friends and roommates, whom he called brothers and family.  Mr. Brik saw himself as a protector and an older brother, and reacted in a violent manner driven by unchecked emotions when some of his acquaintances burglarized the home on New Year's Eve of 2011.  Mr. Brik is not proud of his past actions.  He pleaded guilty to burglary and assault and served time for those offenses.  Notably, Mr. Brik did not act in any violent manner since those incidents as he truly learned his lesson and acquired the skills on how to control his temper.

After the criminal charges were filed against him in Duluth in February of 2011, Mr. Brik was trying to make positive changes in his life.  This is the time when he met Omar Wazwaz and saw a great business opportunity as well as a promising friendship. Mr. Wazwaz was a prominent charismatic shop owner who had been selling SSCs in his smoke shop since late 2009.  Those products were selling well and openly for a few years and Mr. Brik believed that he found a way to put his entrepreneurial skills to great use: make money and develop a business.  He was very proud to bring the opportunity to manufacture SSCs to Mr. Wazwaz, and saw himself as a successful and innovative entrepreneur.   Mr. Brik also saw in Mr. Wazwaz someone he could relate to as a family.  Mr. Wazwaz called everyone "family" and there was this false sense of belonging to something big.

At the beginning, Mr. Brik truly thought his activities were legal: the products were selling openly in shops, James Carlson enterprise in Duluth was booming, and nothing seemed to suggest that what Mr. Brik was doing was unlawful.  In fact, he felt so great about this opportunity that he

offered two of his good friends, Steve and Dan Lyke, to join him in the business. In his usual way of sharing his fortunes, Mr. Brik wanted to extend the opportunities to his friends.

What happened next is what Mr. Brik is truly ashamed of and is still looking for answers as to how he could get himself and his friends entangled so deeply in illegal conduct. Because, of course, he could not help to notice that some of the aspects of his business venture were not legal. The product was labeled "not for human consumption," the communication with suppliers was secretive, the packaging coming from overseas was mislabeled to avoid detection, some shipments were seized by the border patrol. But Mr. Brik kept convincing himself that it was part of doing business, that he was staying legal as long as he was dealing with compounds that were not "scheduled", that he was being careful and smart. He invested so much effort and his business acumen into this endeavor that he refused to see for what it was: a highly illegal and harmful activity.

The US Attorney portrays Mr. Brik as a sinister and calculating leader of a criminal enterprise who deliberately violated the law, much like Mr. James Carlson. But the reality of a situation is that Mr. Brik was in complete and utter denial about his actions. He wanted for this enterprise to work out so badly that he kept closing his eyes to things that were so apparently illegal and wrong. He convinced himself that he was acting ahead of the law. He convinced himself that by switching to unscheduled compounds somehow kept him within the legal bounds. He needed for this enterprise to work to prove to himself and others that he was an achiever. He did not allow himself to think that he was breaking the law. He finally stopped his SSC production activities in September of 2013, about two years prior to his indictment. This was the time when James Carlson was arrested and prosecuted in Duluth, and it became abundantly clear that selling and producing

SSCs, scheduled or not, was illegal. Mr. Brik stopped his operation, went back to school, started working and stayed out of trouble.

Mr. Brik took a long time to come to grips with his culpability. When he was indicted in March of 2015, while he knew that manufacturing and selling SSCs was illegal, he kept relating his behavior to his thinking at the time he was engaged in that unlawful activity, and had a very difficult time admitting that he knew back then that what he was doing was illegal and punishable under the law. His denial was so strong that it took him months to see his actions for what they were: illegal, whether he intended them or not.

### B. Present

Mr. Brik turned his life completely since September of 2013, two years before the charges were filed in this case. He went back to school for his degree in Business Administration. He is two semesters away from getting his Bachelor of Arts degree from Lake Superior College. He started working for Cosey Painting and remains employed there, working on average between 20-30 hours per week (seasonal job). In 2016, Mr. Brik started volunteering at CHUM as a food shelf volunteer. He started there 2 times a week, and on average volunteered about 400-500 hours. Mr. Brik went back to sports and started playing semi-pro football. Mr. Brik also followed all of the requirements of his pre-trial release, which was more strict than other co-defendants (with the exception of Awad) because of the curfew.

### C. Future

While understanding that he may be spending lengthy time in prison, Mr. Brik is looking forward to putting his troubles behind him and never letting himself to be involved in any criminal activity. He already established his crime-free existence since 2013 and will continue to live his life as a productive and law-abiding member of the society. He will continue his volunteer work

with various organizations.  He has a long history of volunteering since high school for Salvation Army, various food shelves, Meals On Wheels, and Paintathon.  He even used to ring the bell at Christmas time collection donations for the Salvation Army.  Mr. Brik is looking forward staring a family someday.

### D. Downward variance is appropriate in this case.

Mr. Brik appreciates the seriousness of his conduct and understands that the Court must give him the sentence that reflects the seriousness of his offense, provides adequate deterrence to criminal conduct, protects the public from further crimes, and provides Mr. Brik with needed educational or vocational training.  Mr. Brik hopes that the Court will consider the circumstances of his offense and his life trajectory and will instill the sentence "sufficient, but not greater than necessary." 18 U.S.C. §3553(a).

There were 8 co-defendants in this case.  Most of them already sentenced by this Court.  On the scale of culpability, Mr. Brik falls closer to Steve and Dan Lyke, then to Wazwaz or Awad.  Both Steve Lyke and Mr. Brik pleaded guilty to two counts, both were involved in similar activities in the conspiracy.  In fact, when Mr. Brik left Mankato, Steve Lyke virtually became Mr. Brik in the "Wazwaz criminal enterprise" as he assumed all of Mr. Brik's responsibilities with manufacturing SSC for Omar Wazwaz.  Much like Steve and Dan Lyke, Mr. Brik did not derive nearly as much money as Omar Wazwaz.  All three, Steve, Dan and Mr. Brik, took a long time to accept responsibility to their crime and all three were bound for trial, pleading guilty just before the jury was coming into the courtroom.

Much like Steve and Dan Lyke, Mr. Brik had disadvantaged childhood and had to overcome a lot of adversity.  Dan Lyke in his argument for a 36-month sentence cited numerous cases in support of leniency based on neglect and abuse suffered by the defendant as a child. (Doc.

7

463, pp. 10-13). Finally, all three took big strides in rehabilitating themselves since leaving the conspiracy. All these factors support a downward variance for Mr. Brik.

Based upon the circumstances of his case, Mr. Brik is pleading with this Court to sentence him to 60 months in prison. This would be a fair and reasonable sentence considering all of the above.

Dated: *June 9, 2017*  Respectfully submitted,

s/ *Milana P. Tolins*

Milana P. Tolins, #0314213
MILANA P. TOLINS, LLC
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 375-9400